UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Donald Sanders,<br><br>    Plaintiff,<br><br>v.<br><br>BNSF Railway Company,<br><br>    Defendant. | Court File No. 17-cv-5106 (ECT/JFD)<br><br>**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS** |

# INTRODUCTION

This Court entered judgment in this matter—a single plaintiff employment discrimination case—on June 29, 2022 in the total amount of $1,189,807.24. Sanders' counsel now seeks an award of fees and costs of over $1.2 million——an amount that exceeds the total amount he recovered. While the FRSA permits an award of **_reasonable_** attorney fees, it does not permit a windfall. Yet, that is precisely what Sanders seeks. BNSF Railway Company therefore respectfully opposes Sanders' motion and, for the reasons set forth below, requests that the Motion (ECF 274) be denied as requested and the fees and costs Sanders seeks be significantly reduced.

# ARGUMENT

**I.    LEGAL STANDARD**

The Federal Railroad Safety Act ("FRSA") allows for the award of "*reasonable* attorney fees." 49 U.S.C. §20109(e)(2)(C) (emphasis added). The beginning place for calculating an award of attorneys' fees is the lodestar, "which is calculated by multiplying

1

the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State Univ.,* 295 F.3d 849, 851 (8th Cir. 2002). Both sets of numbers must be reasonable. *Hanig v. Lee,* 415 F.3d 822, 825 (8th Cir. 2005).

This Court is vested with the discretion to consider a downward adjustment of the lodestar. The degree of success achieved by plaintiff is a key factor in that determination. *See Hensley v. Eckerhart,* 461 U.S. 424, 436-38 (1983). The extent of relief obtained is also a permissible factor in the determining a reasonable fee. *Id.* at 438, n.14.

## II.   SANDERS' ATTORNEY FEE REQUEST IS NOT REASONABLE.

Sanders' fee request suffers from three major failings. *First,* Sanders materially overstates his degree of success, particularly when considering the damages he sought as compared to the judgment he obtained. *Second*, the hourly rates Sanders seeks are unreasonably and excessively inflated because they improperly seek national rates (which well exceed the typical rates awarded in other FRSA cases), and for which there is no reason to depart from the local prevailing market rate of Minnesota. Further, there is no basis for Sanders to reap a windfall by applying current billing rates in 2022 throughout six years of litigation dating back to 2016. Third, Sanders' nearly 3,000 hours expended by no less than two-dozen billing timekeepers on a single-plaintiff, single-count discrimination case is excessive and unnecessary.

### 1.   Sanders Overstates his Degree of Success.

Sanders' characterization of his success disregards the actual judgment he obtained in the case. [ECF 266] vHe repeatedly relies on the jury's punitive damages award, but that award is inapplicable as this Court properly reduced it to the $250,000 statutory

maximum prior to entering judgment. [ECF 265, 266] (granting motion to apply statutory cap and entering judgment on punitive damages on such amount). Sanders' attempt to rely on an inapplicable damage award as a foothold to improperly inflate his fee request is contrary to Congress' purpose and intent in establishing a mandatory statutory maximum. Indeed, it would be absurd to think that counsel could capitalize on a windfall fee measured against a jury award that the FRSA precludes by its clear statutory language. 49 U.S.C. §20109(e)(3) (statutory language plainly capping punitive damages at $250,000).

Sanders also mischaracterizes his degree of success on other damages. For instance, Sanders states he recovered "back pay in the entire amount he requested." Motion at 7. This is not true. To the contrary, Plaintiff's expert, Dr. Dale Boisso, presented two alternative back wage loss scenarios:

1. one wage-loss scenario based on a higher annual salary of $160,201 (which would have resulted in back wage losses of $693,660, plus interest (of $197,250) and retirement benefits); and

2. one wage-loss scenario based on a lower annual salary of $121,236 (which resulted in back wage losses of $470,132 plus interest (of $137,875) and retirement benefits). P-288.

The jury rejected Sanders' higher wage loss scenario, awarding damages instead based on the lower $121,236 annual salary. Specifically, the jury awarded a total of $611,797 (once interest and retirement benefits were included), instead of the higher wage that would have exceeded significantly more. P-288 (see table including expert's

3

176532597.1

back wage lost, interest and other calculation). Because the jury's award was only approximately 65% of the amount Sanders sought from Boisso's first wage loss scenario, Sanders certainly did not recover "the entire amount [of back pay] he requested," as he claims. Motion at 7.

As to emotional-distress damages, Sanders' counsel argued that these damages were "far greater" than his economic damages. (T. 1305) ("So I submit to you that his emotional distress damages are far greater than his economic damages, far greater.") Counsel made this statement after reminding the jury of his expert's two economic damage scenarios (which ranged from $611,797 under the second wage loss scenario to over $900,000 respectively in higher wage loss scenario). *Id.* Sanders' statement thus clearly intimated to the jury they should award emotional distress damages in an amount well over a million or more. Instead, the jury awarded $250,000 in such damages.

Finally, following trial, Sanders sought ***12 years*** of front pay totaling close to $600,000. *See* ECF 244 (seeking $597,155 in front pay damages). Notably, his expert's damage reports estimated far higher losses in his report. P-288. Had Sanders' request been granted, the years sought would have exceeded his entire 9-year tenure at BNSF. But instead, in a detailed opinion issued June 29, 2022, this Court awarded Sanders only a fraction—specifically 1/7th (or 14%)—of the front pay and future benefits he sought in his motion. ECF 265 (awarding front pay for two years in the amount of $78,010.24).

### 2. The Hourly Rates Sanders Seeks Are Inflated and Not Reasonable

Contrary to Sanders' fee request, there is no basis for this Court to apply national rates commensurate with Am Law 100 firms to Sanders' rates, much less any basis for

4

this Court to apply current hourly rates for 2022 over six years of litigation history.

"A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Miller v. Dugan* 764 F.3d 826, 831 (8th Cir. 2014). Here, the prevailing market is not national Am Law 100 labor and employment attorney rates, as Sanders seeks. Rather, it is the local community in Minnesota. Sanders disregards that the Minnesota community is comprised of numerous FRSA attorneys who litigate plaintiff-side FRSA matters. For instance, the law firms of Hunegs, LeNeave & Kvas and of Yaeger & Jungbauer are just two examples of Minnesota-based law firms who litigate and represent individuals in contested FRSA cases. Declaration of Tracey Donesky, Ex. A (attaching portions of each firm's websites detailing and including FRSA litigation experience as area of practice). In fact, these Minnesota law firms were taking on FRSA cases in Minnesota several years before the Sanders' counsel began to do so. Yet, the hourly rates other FRSA counsel have sought and received are well below the rates Sanders seeks here. *See e.g., Wooten v. BNSF Ry. Co.*, 387 F. Supp. 3d 1078, 1109 (D. Mont 2019) (determining prevailing market rate for Yungbauer's FRSA legal team at $425/hour for the most senior partner, and $350/hour and $275/hour for more junior attorneys, and $110/hour for paralegal); *Fresquez v. BNSF Ry. Co.*, 17 cv-0844, 2021 WL 862455 at *3-4 (cutting counsel's billed hours by 50% and applying an hourly rate of $450 in 2021 for two-person legal team following 6-day jury trial).

Sanders seeks to justify his higher-than-market rate by arguing that this case was a complex matter. But it was a single-Plaintiff employment-discrimination case brought by

a Minnesota resident and tried by Minnesota counsel. Moreover, at the time it was tried, the law and legal standards in the Eighth Circuit were reasonably settled. *Dakota, Minnesota & Eastern R.R. v. U.S. Dept. of Labor,* 948 F.3d 940, 945-946 (8th Cir. 2020) (confirming it is settled Eighth Circuit law that the contributing factor a plaintiff must prove is *intentional retaliation.*). *See also Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 791 (8th Cir. 2014) (emp. added); *Hess v. Union Pac. R.R.,* 898 F.3d 852, 858 (8th Cir. 2018)*, Smith-Bunge v. Wisconsin Central,* 946 F.3d 420, 424 (8th Cir. 2019); *Heim v. BNSF Ry.*, 849 F.3d 723, 727 (8th Cir. 2017); *Blackorby v. BNSF Ry.*, 849 F.3d 716, 722 (8th Cir. 2017). Allegations of mere "but-for" causation are legally insufficient. *BNSF Ry. v. U.S. Dept. of Labor,* 867 F.3d 942, 946 (8th Cir. 2017) (that protected activity initiated a series of events leading to an adverse action does not satisfy FRSA's contributory factor causation standard.).

Plaintiff also suggests his FRSA claim "involved a complex regulatory scheme," and that "what constitutes a track defect is a challenging endeavor and involves analysis of hundreds of pages of FRA and BNSF rules and regulations." Motion at 9 (ECF 274). Yet, as BNSF argued in its Rule 50 Motion for Judgment as a Matter of Law, it is precisely Plaintiff's lack of specificity and failure to identify any federal law, rule, or regulation he was purportedly told (but allegedly refused) to violate as to why he failed to prove he engaged in FRSA-protected conduct in good faith. *See* ECF 289, 4-5. Further still, Sanders' 92-page summary of billing records contains no entries describing specific substantive work by counsel in researching, educating and/or becoming familiar with this supposed complex and challenging portion of the case. Ex 276-4 (revealing no detailed

billing entries supporting the supposed complex research, review or challenging analysis of applicable FRA regulations).

There is also no basis to apply current rates spanning *six years of litigation*. Plaintiff cites to *Missouri v. Jenkins,* 491 U.S. 274, 282 (1989) as requiring that the Court apply current rates throughout the entire case. But that case falls under a different statute. *Id.* Further, *Jenkins* only holds that it is appropriate and sometimes necessary to take the time value of money into account when awarding fees. Sometimes that can be done by applying currents rates to historical work. But nothing about *Jenkins* mandates using that approach, particularly where, as here, such rates would date back six years to 2016, when rates would obviously be much lower. Applying current rates across the historical span of the case is particularly inappropriate here where two years passed under a Covid-standstill caused by a global pandemic that was not BNSF's fault. Here, applying current rates (much less the inflated current rates Sanders seeks) to fees billed from 2016 forward would be a windfall. *Perdue v. Kenny A.,* 130 S.Ct. 1662, 1672-1673 (2010) (fee should not "produce windfalls to attorneys" or "provide a form of economic relief to improve the financial lot of attorneys."). Sanders' request is absurd.

Additionally, as noted above, the evidence does not support the requested current rates. For instance, in other FRSA litigation such as *Fresquez, Wooten,* the hourly rates found to be reasonable more in the ranges of $450, $425 or $400/hour, including of the most senior partner (not $775 as sought by J. Kaster here). *E.g., Fresquez,* 2021 WL 862455 at *4 (applying hourly rate of $450); *Wooten,* 387 F. Supp. 3d 1078, (applying hourly rate of $425/hour to the most senior attorney on the file (Jungbauer), and $350 and

$275 to other counsel on the file).¹ Notably too, in the *Champagne* case Sanders relies on, the Court applied an hourly rate of $450 to an 18-year managing partner. This rate was awarded in 2021, only a short period earlier.

3.  **Hours Sought Are Unreasonable and Excessive**

Incredibly, Sanders seeks to recover fees on 2,856 hours billed by 9 different attorneys and another 15 law clerks, paralegals and/or other support staff. *See* Kaster Declaration, Tab 4. This 24-person member legal team—and the total hours expended—for a single-plaintiff discrimination case is nothing short of astonishing. It is unreasonable and excessive on its face.

(a)  **Total Hours Excessive**

Plaintiff's 2,856 hours far exceeds the total hours expended and sought by FRSA counsel in other cases. For example, in *Barati v. Metro-North RR. Company,* a two-person attorney team sought 657.40 hours following a six-day jury trial. *See* 939 F.Supp.2d 153, 156 (D. Conn. 2013) ("Plaintiff seeks fees for 345.66 hours of work performed by Attorney Goetsch and 311.75 hours of work performed by Attorney Perry"). Trial in this case proceeded for two additional days, but the hours Plaintiff seeks here are <u>four times</u> that of counsel in *Barati*. The FRSA case of *Blackorby v. BNSF Ry. Co.* also exemplifies the exorbitant hours Sanders seeks here. There, the parties actually tried the case to a jury <u>three</u> different times. 2021 U.S. Dist. LEXIS 205144 (Sept. 28, 2021). Here, the case has been tried only once. Yet, counsel in *Blackorby* billed

---

¹ Sanders points out that the Court applied hourly rates of $650, $525 and $350 respectively in *Koziara v. BNSF Ry. Co.*, 2016 WL 4435299, but as the decision notes, defendant did not object to the rates in that case. *Id.* at *2.

substantially less total hours than what Sanders seeks here. *Id.* *7 (seeking 1683 total hours following three jury trials).

Indeed, Sanders' fee request of over $1.2 million far exceeds attorney fee awards in other FRSA cases. *See e.g., Rookaird v. BNSF,* Case No. 14-176RSL (W.D. Wash) (Sept 2, 2016) ($411,466 in fees); *Wallis v. BNSF Ry Co.*, 2014 U.S. Dist. LEXIS 56834 (W.D. Wash. Apr. 23, 2014) ($278,368 in fees); *O'Neal v. Norfolk Southern R.R. Co.*, 2018 U.S. Dist. LEXIS 194771, at *15 (M.D. Ga. 2018) ($411,998); *James v. CSX Transp. Inc.*, 2017 U.S. Dis. LEXIS 143641 at *19 (M.D. Ga. Feb. 21, 2017) ($250,413 in fees). Further, in *Wooten,* the court denied Plaintiff's request for nearly $1.3 million and granted fees in the amount of $657,107 instead. 387 F. Supp. 3d at 1118-1119.

### (b) Team Excessively Large and Unnecessary

The size of Sanders' legal team was excessive and unnecessary. Sanders' fee petition identifies no less than 9 attorneys (4 partners, 1 senior associate and 4 other associates) along with over a dozen other support staff who billed time to the file. Motion at 14. There is no other FRSA case of which Defendant is aware in which a court awarded fees to a legal team of this size. At most, this Court should exclude all but the two attorneys who primarily litigated the case (James and Lucas Kaster), and paralegal Pathmann (for non-clerical work, which is not recoverable), at hours and rates substantially reduced for reasons set forth herein.

### 4. A Sizable Percentage Reduction Is Warranted

Given the above considerations, a significant pro-rata reduction is warranted. Specifically, this Court should follow the guidance from other courts and decisions which

9

176532597.1

reduced the sought after attorney fee by an across-the board percentage to reflect a more reasonable award. Here, Sanders' fee request is unreasonable on its face and should be reduced by at least more than 55% of the award sought. Courts have regularly applied reductions in such (or greater) percentages where, as here, the fees sought profoundly exceed the bounds of reasonableness. *See e.g., Jenkins v. University of Minnesota et.al,* Civ. No. 13-1548 (D. Minn. Oct 13. 2017) (awarding $305,003.21 in fees of the $801,545 sought by plaintiffs' counsel (which included the Nichols Kaster firm) following a favorably jury verdict on client's 42 U.S.C. §1983 claim) (an over 55% reduction); *Monohon v. BNSF Ry. Co.*, 4:14-cv-00305, 2022 WL 2129134 (S.D. Iowa June 14, 2022), *app. filed* (reducing attorney fee request by 57% due to excessive amount of hours billed (2,382.15 hours in a little over 4 years, including the jury trial)); *Wooten,* 387 F. Supp. 3d 1078 (reducing by 50% fees sought by counsel).

    **5.**    **Alternatively (or in addition thereto), the Court Should Significantly Cut the Claimed Hours to Account for Various Deficiencies and Unrecoverable Time Including Unnecessary Work and Overlawyering**

Other significant reductions in hours sought are warranted for the reasons listed below.

    **(a)**    **Plaintiff is Not Entitled to Fees for Unsuccessful FRSA Claim Brought Before OSHA**

Sanders' fee petition seeks recovery of hours spent on his FRSA case before OSHA. However, Sanders lost his case at that level. Ex D-86 (concluding upon investigation that Sanders' FRSA Complaint failed on the merits). Further still, a review of Sanders' billing records reveal that the matter was first handled by completely different

attorneys within the firm. ECF 276-4 (2-3) (showing case handled at that stage by attorneys Nick Thompson and Matthew Frank). Indeed, Lucas Kaster did not bill any time to the file until nine months into OSHA's investigation, at which time the case was transferred to him. *See* ECF 276-4 at 3 ("conference with M. Frank regarding case transfer" and MAF entry stating "discuss case transition with L. Kaster"). L. Kaster then had to spend time familiarizing himself with the case file, thus resulting in duplicative work. *See* 276-4 at 4 (reviewing file before call with client; billing 3.2 hours "reviewing investigative hearing transcripts and exhibits; and billing 4.5 hours for "meeting with client) *cf.* at 1-2 (showing Nick Thompson billing 5 hours to "review transcripts and exhibits and telephone conference with J. Mozinski regarding same" and Matthew Frank reading client documents and drafting complaint). Jim Kaster had even less involvement at that stage, billing less than 2.5 hours to the file before November 14, 2017.

Accordingly, for these reasons, no fees should be recovered for the OSHA stage of the case which ran from August 4, 2016 through the filing of the complaint on November 14, 2017. This results in an exclusion of $29,311.50 in fees sought. *See* ECF 276-4, 1-3 of 92 (excluding entries from August 4, 2016 through November 13, 2017).

### (b)   Plaintiff's Hours Are Excessive and Unreasonable

Sanders seeks this Court's approval of an astounding 2,856 hours, including three separate trial settings, claiming "[t]he hours were spent reasonably, were necessary, and should be approved." Motion at 15. In doing so, Sanders relies on a single case – *Champagne v. Columbia Dental P.C.,* to claim he should be awarded all hours billed to the case, despite delays due to the Covid pandemic. But Sanders grossly overstates this

11

176532597.1

case. Except for making passing reference to Covid-related delays in the procedural summary, the decision makes no specific Covid-related findings or holdings. Moreover, the case is highly distinguishable. Both cases involved an 8-day jury trial in late 2021. However, in *Champagne*, plaintiff's counsel sought an attorney fee award of $50,850 following their client's recovery of $110,000 in emotional distress and punitive damages. 2022 WL 951687 *1-3. Unlike here, counsel litigated the case from inception to post-trial as a single lawyer and thereafter sought a total of 113 hours at an hourly rate of $450/hour. *Id.* By contrast, Sanders had nine different attorneys bill to the file and seeks recovery on 2,856 hours - a ratio that is *25 times greater* than the hours sought and recovered by counsel in the *Champagne* decision.

Furthermore, a review of Sanders' 92 pages of billing records reveals numerous hours were billed during Covid standstills and at times when there was no new trial date scheduled or any reasonable anticipation of one being set in the near future. Times billed during these periods thus call into question their necessity and/or reasonableness. Indeed, for over a year beginning in mid-March 2020, civil trials were postponed indefinitely by the District of Minnesota and did not resume (even on a limited basis) until May 2021. While the Court did issue a new trial date for February 16, 2021 in mid-September 2020 (ECF 110), by December 8, 2020, that trial date was postponed indefinitely due to a rise in Covid numbers. *See* 12.8.2020 Minute Entry.

Despite these standstills and periods without a trial date on the reasonable horizon, Plaintiff's trial team continued to bill a surprising number of hours to the file. This is particularly true of internal conferences. Even under normal case circumstances, the

sheer number of hours dedicated to inter-office conferences (including the number of billing timekeepers in attendance) is startling. Just looking even at Covid-related periods (during which their necessity and reasonableness is called into even greater question), trial team preparation meetings were held on: April 1, 2020, April 8, 2020, April 15, 2020, April 29, 2020, May 6, 2020, May 11, 2020, May 13, 2020, May 21, 2020, May 27, 2020, June 11, 2020, June 17, 2020, June 24, 2020, July 1, 2020, July 6, 2020, July 15, 2020, July 22, 2020, July 29, 2020, September 2, 2020, September 16, 2020. ECF 276-4. These group meetings were attended by no less than five billing timekeepers (generally two partners, one associate and two paralegals) and often lasted in duration of .50 to over 1.0 hour in duration. In billing records, these meetings would be vaguely and generically described as "trial team meetings," "trial team status meeting" without any further specificity or detail. *Id.* Indeed, for just the dates outlined above, BNSF calculates $29,311.50 spent on vaguely described trial team status meetings at excessive rates.[2] Furthermore, all total, the number of billable hours spent on inter-office conferences preparing for and attending team meetings from inception through trial is even more staggering: BNSF calculates 182.5 hours billed to such conferences, for a total of $71,395.50 (based on Exhibit 4's inflated rates).

This facially excessive amount should be significantly reduced or eliminated altogether. Courts have reduced and/or eliminated entries that reveal overstaffing, inefficiencies, unnecessary and duplicative billing, particularly when, as here, multiple

---

[2] And if calculated based on the inflated hourly rates Sanders seeks, just a single, one-hour trial status meeting among five timekeepers would cost $2,015.00.

13

176532597.1

lawyers seek fees. *E.g., Schalcher v. Law Offices of Phillip Rotche & Assoc.,* 574 F.3d 852, 858 (7th Cir. 2009); *Hensley,* 461 U.S. at 434 (district courts "should exclude . . . hours that were not 'reasonably expended,' including 'excessive, redundant, or otherwise unnecessary work). At least one court has already remarked on the frequent and excessive degree of inter-office conferences held by Plaintiff's firm during a litigated matter and reduced the fee awards accordingly. *See Koziara v. BNSF Ry Co.,* 2016 WL 4435299, at * 3 (W.D. Wis. Aug. 19, 2016) (noting that while conferences were generally short (most were 0.1 or 0.2 hours), "they were frequent" and reducing the $75,290 hours billed to such conferences by one third). Here, however, the duration of such "trial preparation meetings" were much more substantive and longer in duration (ranging between .50 to 1.50 hours each) than in *Koziara.*

### (c)    Reductions for Block Billing, Vague Entries

Separate from inter-office conferences, BNSF also objects to Plaintiff's fee request on the basis that its billing report is replete with vague, block entries. ECF 276-4. "Block billing" – that is, billing a large number of hours for multiple tasks, does not permit a Court to determine actual time spent on particular tasks, nor whether multiple lawyers are duplicating each other's work. *E.g., Green v. City of New York,* 403 F. App'x 626, 630 (2d Cir. 2010) (affirming district court's reduction of hours sought due to pervasive block billing in time entries and holding that the practice raised questions regarding the reasonableness of the entries). Hours containing overly vague descriptions, and block billed entries should be excluded. *See* 276-4 (92-page billing entries). Further, courts have also imposed percentage reductions on total hours billed by counsel for use of

vague block entries. *Id.*; *Barati v. Metro-North R.R. Co.* 3:10-cv-1756 (D. Conn. Mar. 27, 2013) (imposing a 10% discount on all of one counsel's hours in light of block billing).

### (d) Fees Not Recoverable for Mock Trial

BNSF also objects to the fees Plaintiff's counsel billed for conducting a mock trial. Courts have routinely reduced awards for mock trials as unnecessary and excessive. *Montanez v. Fico,* 931 F. Supp. 2d 869, 882 (N.D. Ill. 2013). Indeed, attorneys from this same firm were denied fees sought for conducting a mock trial in another FRSA case. *Koziara v. BNSF Ry. Co.*, 2016 WL 4435229 *4 (W.D. Wis. Sept 2, 2016) (holding Koziara's mock trial excessive preparation and unreasonable to include in hours sought in fee award). The same result is compelled here. Accordingly, counsel's fee request should be reduced by another 173.80 hours (totaling $84,071.00 based on Sanders' inflated rates) for fees incurred related to the preparation, attendance and review of the mock trial.

### III. PLAINTIFF'S REQUEST FOR NON-TAXABLE COSTS ARE NOT REASONABLE AND/OR NOT RECOVERABLE

Plaintiff's request for non-taxable costs in the amount $68,290.55 suffers from several deficiencies. Pl's Motion 20-21. *First*, Plaintiff's request to recover $28,498.22 in mock trial costs fails. In addition to excluding attorney fees incurred for mock trial activities, the costs associated with them are also not recoverable. *Roswick v. Mid Dakota Clinic, P.C.*, No. CV 17-44, 2019 WL 5964553, at *14 (D.N.D. Nov. 13, 2019) (excluding the mock trial expenses due to the fact that the court found the court could

15

have been effectively tried without this technique. (Title VII Claim)); *Axel v. Griffin*, No. 12-1019, 2014 WL 896727, at *2 (D. Minn. Mar. 6, 2014) (finding that a focus group in a relatively simple case is not a reasonable cost); *Denesha v. Farmers Ins. Exch.*, 976 F. Supp. 1276, 1291 (W.D. Mo. 1997), *aff'd in part, rev'd in part*, 161 F.3d 491 (8th Cir. 1998) (holding case could have been tried without a mock trial); *Gerling v. Waite*, No. 4:17-CV-02702, 2022 WL 558083 at *5 (E.D. Mo. Feb. 24, 2022) (holding mock trial fees unreasonable given the number of attorneys staffing the case); *Koziara,* 2016 WL 4435299 *7 (disallowing both the fees for conducting mock trial and also disallowing the expenses).

Courts have also routinely denied recovery of Westlaw research fees, holding that such costs are already built into billable rates. *Fresquez v. BNSF Ry. Co.*, 2021 WL 862455 at *4 (D. Colo. Mar. 8, 2021) (holding that plaintiff failed to show that he is entitled to legal research and PACER costs); *Vialpando v. Johanns,* 2008 WL 410369 at *20 (D. Colo. Feb 12, 2008) (holding online legal research expenses not reimbursable). The same is true of Relativity charges. Thus, Plaintiff's request for $1,393.91 (Pacer, Westlaw fees) and Relativity charges ($1,638.07) should be denied.

Sanders' expert witness fees of $23,210.13 suffer from vague entries, duplicative work and thus require a reduction. Exh. 9. Further, it is unclear (and unlikely) that 7.33 hours was spent on January 13, 2021 with Tom Roth from the Labor Bureau. Such entry is either a typographical error or, excessive, either of which require its elimination and/or reduction.

176532597.1

Finally, Sanders' seeks to recover $1,636.25 in video deposition fees. But video depositions are a luxury, not a necessity, and thus such costs should be recoverable. This is particularly so, given such video was rarely, if ever, used at trial, and thus was unnecessary.

Accordingly, Sanders' request for non-taxable costs in his motion should be reduced by the amounts set forth above (denying $28,498.22; $1,393.91, $1,638.91 and $1,636.25). Further, the costs related to expert witness fees (Dr. Boisso) should, at minimum, be reduced by half (thus only half of the requested $23,210.13).

## CONCLUSION

BNSF respectfully asks this Court to deny Plaintiff's Motion for fees and/or costs and/or award a substantially reduced amount than requested for the reasons set forth above.

Dated: August 26, 2022

By: */s/ Tracey Holmes Donesky*
Tracey Holmes Donesky (MN #302727)
tracey.donesky@stinson.com
**STINSON LLP**
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 335-1500

*ATTORNEYS FOR DEFENDANT*

176532597.1